IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY DENNIS, | : Civil Action No. |
| | : |
| Plaintiff | : |
| v. | : JURY TRIAL DEMANDED |
| | : |
| W.W. ADCOCK, INC., | : |
| | : |
| Defendant | : |

# COMPLAINT

## PARTIES

1. Plaintiff, Gary Dennis ("Mr. Dennis" or "Plaintiff"), is an African American adult individual of color, residing at 2871 Croyden Road, Harrisburg, Dauphin County, Pennsylvania 17104.

2. Defendant, W.W. Adcock, Inc. ("Adcock" or "Defendant"), is a Pennsylvania corporation with offices throughout the Commonwealth of Pennsylvania and with its principal place of business located at 2611 Philmont Avenue, Huntingdon Valley, Pennsylvania 19006.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action because Mr. Dennis's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a

("Title VII"); and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq*.

4. This is a civil action involving claims in excess of $75,000, exclusive of interest and costs. Jurisdiction is based on 28 U.S.C. §1331 (federal question) and 28 U.S.C. § 1367(a) (supplemental or pendent jurisdiction over state law claims).

5. Ms. Dennis received the EEOC's notice of right to sue fewer than 90 days before the filing of this complaint.

6. Venue over this action lies with the United States District Court for the Middle District of Pennsylvania.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7. At all relevant times, Adcock employed in excess of 500 individuals and was subject to the above-quoted state and federal statutes.

8. On or about August 15, 2006, Mr. Dennis was hired by Adcock as a warehouse worker.

9. Mr. Dennis was continuously employed by Defendant until he was wrongfully laid off and/or terminated in March 2013.

10. At all relevant times, Mr. Dennis was qualified to work as an employee of Defendant and was able to perform his essential job functions without accommodation.

## **RACIALLY HOSTILE WORK ENVIRONMENT**

11.  At various relevant times from approximately April 2011 until his termination in March 2013, Mr. Dennis was subjected to a racially hostile work environment and the racially hostile actions of his white male supervisors (including Russ Lawrence, Branch Manager, Stan Askins, Assistant Manager, Ron Valatti, Sales Manager, and Nick Varner), in that:

(a) Mr. Dennis was subjected to unwelcome harassment and the harassment was based on his being African American/black;

(b) the harassment was sufficiently severe or pervasive that it altered the terms and conditions of his employment and created an abusive working environment;

(c) the offending conduct was both objectively and subjectively offensive and other employees in his department were subjected to it;

(d) Defendant is liable for its supervisors' wrongful actions based on vicarious liability;

(e) Defendant's and its supervisors' conduct had the purpose or effect of unreasonably interfering with Mr. Dennis's performance or creating an intimidating, hostile, or offensive environment;

(f) for example, Mr. Dennis's supervisors regularly distributed and displayed to Mr. Dennis and fellow co-workers racially offensive fliers and

computer images and made racially offensive comments to Mr. Dennis and his co-workers;

(g)     Nick Varner, a white supervisor, called Mr. Dennis a nigger in his presence, and even though Mr. Dennis complained to his Branch Manager, Mr. Lawrence, no disciplinary action (or inadequate disciplinary action) was taken against Mr. Varner, and he shortly thereafter received a promotion;

(h)     Mr. Askins, the Assistant Manager, was intoxicated and verbally abusive to Mr. Dennis, and even though Mr. Lawrence knew about Mr. Askins's wrongful conduct, he took no disciplinary action (or inadequate disciplinary action) against him;

(i)     Mr. Lawrence regularly made offensive comments about blacks in Mr. Dennis's presence, including references to President Obama stating that "I can't stand that man," and suggesting that he would not last more than one year because he would "get a bullet between his eyes";

(j)     Mr. Lawrence also commented to Mr. Dennis that blacks keep the price labels on their work boots because they don't work and don't use the boots;

(k)     when Mr. Dennis informed Mr. Lawrence that the comment was inappropriate, Mr. Lawrence merely remarked that "it's a true statement";

4

  (l) in Mr. Dennis's presence, Mr. Lawrence brought up the name of the racist politician, Governor George Wallace;

  (m) in response, Mr. Dennis questioned Mr. Lawrence's reference and asked him whether he knew about Governor Wallace's racist views;

  (n) in response, Mr. Lawrence emphasized that he agreed with Governor Wallace's beliefs and had voted for him; and

  (o) although Mr. Dennis complained about the racially offensive written materials and racial comments, the racial harassment and hostile work environment continued without adequate investigation, discipline, and resolution.

## SEXUALLY HOSTILE WORK ENVIRONMENT

  12. At various relevant times from approximately April 2011 until his termination in March 2013, Mr. Dennis was subjected to a sexually hostile work environment and the sexually hostile actions of his white male supervisors (including Russ Lawrence, Branch Manager, Stan Askins, Assistant Manager, Ron Valatti, Sales Manager, and Nick Varner), in that:

  (a) Mr. Dennis was subjected to unwelcome harassment and the harassment was based on his being male;

  (b) the harassment was sufficiently severe or pervasive that it altered the terms and conditions of his employment and created an abusive working environment;

(c) the offending conduct was both objectively and subjectively offensive and other employees in his department were subjected to it;

(d) Defendant is liable for its supervisors' wrongful actions based on vicarious liability;

(e) Defendant's and its supervisors' conduct had the purpose or effect of unreasonably interfering with Mr. Dennis's performance or creating an intimidating, hostile, or offensive environment;

(f) for example, Mr. Dennis's supervisors regularly distributed and displayed to Mr. Dennis and fellow co-workers sexually offensive fliers and computer images and made sexually offensive comments to Mr. Dennis and his co-workers; and

(g) when Mr. Dennis complained about the sexually offensive written materials and sexual comments, the sexual harassment and hostile work environment continued without adequate investigation, discipline, and resolution.

## ADCOCK'S HARASSMENT POLICY

13. Adcock had an employee handbook (the "Handbook") which claimed to provide equal employment opportunities for all persons regardless of their national origin, race, sex, or any other protected status.

14. The Handbook also included a section governing prevention, investigation, and discipline of sexual and racial harassment, emphasizing that

Adcock prohibits harassment in any form including unwelcome, offensive, or derogatory comments or communications relating to a person's national origin, race, or sex.

15. Defendant's harassment policy further stated as follows:

(a) all employees and supervisors should promptly report all incidents of harassment to their immediate supervisor or the Branch Manager;

(b) supervisors are required to immediately inform the President when allegations of harassment have been made or when the immediate supervisor is aware of the offensive or derogatory comments or actions;

(c) Adcock is required to promptly investigate all reported incidents, and any employee who exercises his right to report an incident will not be subject to retaliation; and

(d) Adcock has a "zero tolerance" harassment policy, which the company considers to be a serious disciplinary offense which will result in disciplinary action up to an including termination. Attached as Exhibit "A" is a copy of the Handbook's section governing harassment prevention, investigation, and discipline (the "Policy").

16. Defendant violated its Policy in that:

      (a)    it failed to act reasonably to prevent racial and sexual harassment by implementing an effective, meaningful, and understandable non-discrimination Policy;

      (b)    it took no affirmative steps to prevent harassment by managers and supervisors;

      (c)    it provided no formal harassment or non-discrimination training to its employees;

      (d)    Mr. Dennis's reasonably complained and attempted to use the grievance procedures under the Policy; and

      (e)    despite Mr. Dennis's complaints, Defendant failed to investigate the harassment against Mr. Dennis and others, failed to discipline (or adequately discipline) its offending supervisors, and failed to enforce its Policy.

## TERMINATION OF EMPLOYMENT

17.    In October 2012, after Mr. Dennis had complained and had unsuccessfully attempted to stop the unwanted racial and sexual harassment, Mr. Lawrence informed him that he was going to be temporarily laid off.

18.    In response to Mr. Dennis's concerns, Mr. Lawrence reassured him that the lay off was only temporary and that Mr. Lawrence would give him a call in March 2013 when he would be rehired.

19. When Mr. Lawrence failed to contact Mr. Dennis as promised, Mr. Dennis called him on or about March 5, 2013 and asked when he would be rehired by the company.

20. In response, Mr. Lawrence stated that he had been intending to contact Mr. Dennis about his job status, indicating "They don't want you to return to work."

21. In response, after asking Mr. Lawrence to repeat his statement, Mr. Dennis asked him to identify the individuals in question and why the decision had been made.

22. In response, Mr. Lawrence generally referred to "the guys in the warehouse," and stated that he had no control over the decision (but did not provide the reason for the decision).

23. Mr. Dennis was fired after his so-called lay-off in contrast to those co-workers who were not black and who did not complain about racial and sexual harassment.

24. Defendant treated Mr. Dennis, an African American/black, differently than his comparators, including ongoing harassment, discrimination, failure to rehire, and retaliation resulting in his termination from employment.

## COUNT I
## <u>RACIAL HARASSMENT</u>

25. Mr. Dennis incorporates by reference herein paragraphs 1 through 24 above.

26. Defendant and its supervisors sexually harassed, discriminated, and retaliated against Mr. Dennis based on his race within the meaning of Title VII and the PHRA, in that:

    (a) he suffered intentional discrimination due to his race;

    (b) the discrimination was pervasive and regular;

    (c) the discrimination detrimentally affected him;

    (d) the discrimination would detrimentally affect a person of the same race in that position; and

    (e) vicarious liability exists against Defendant based on the wrongful actions of its employee/supervisors.

27. In contrast to its treatment of Mr. Dennis's comparators, Defendant failed to adequately investigate and address Mr. Dennis's complaints and grievances; laid him off and terminated him as a result of and/or in retaliation for her complaints and grievances; failed to rehire him; and otherwise violated various laws prohibiting racial harassment, discrimination, and retaliation including the Title VII and the PHRA.

28. As a result of Defendant's unlawful conduct, Mr. Dennis has sustained lost wages, lost retirement, and other benefits, attorneys' fees and costs, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

29. Additionally, as a result of Defendant's intentional wrongdoing, which was committed in bad faith and in reckless disregard of Mr. Dennis's interests, he is entitled to punitive damages under federal law in excess of $75,000, plus interest and costs.

30. As a further result of Defendant's wrongful acts and omissions, Mr. Dennis has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related medical and mental health conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Gary Dennis, demands judgment in his favor and against Defendant, including the following relief:

A. reinstatement to his prior position or a comparable position with Defendant;

B. compensation for back pay, front pay, lost retirement, lost wages, and other lost employee benefits;

C. compensatory, statutory, and punitive damages in amounts to be determined at trial;

D. attorneys' fees, costs, and interest; and

E. such other relief as the Court deems appropriate.

## COUNT II
## SEXUAL HARASSMENT

31. Mr. Dennis incorporates by reference herein paragraphs 1 through 30 above.

32. Defendant and its supervisors sexually harassed, discriminated, and retaliated against Mr. Dennis based on his sex within the meaning of Title VII and the PHRA, in that:

    (a) he suffered intentional discrimination due to his sex;

    (b) the discrimination was pervasive and regular;

    (c) the discrimination detrimentally affected him;

    (d) the discrimination would detrimentally affect a person of the same sex in that position; and

    (e) vicarious liability exists against Defendant based on the wrongful actions of its employee/supervisors.

33. In contrast to its treatment of Mr. Dennis's comparators, Defendant failed to adequately investigate and address Mr. Dennis's complaints and grievances; laid him off and terminated him as a result of and/or in retaliation for

his complaints and grievances; failed to rehire him; and otherwise violated various laws prohibiting racial harassment, discrimination, and retaliation including the Title VII and the PHRA.

34. As a result of Defendant's unlawful conduct, Mr. Dennis has sustained lost wages, lost retirement, and other benefits, attorneys' fees and costs, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

35. Additionally, as a result of Defendant's intentional wrongdoing, which was committed in bad faith and in reckless disregard of Mr. Dennis's interests, he is entitled to punitive damages under federal law in excess of $75,000, plus interest and costs.

36. As a further result of Defendant's wrongful acts and omissions, Mr. Dennis has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related medical and mental health conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Gary Dennis, demands judgment in his favor and against Defendant, including the following relief:

A. reinstatement to his prior position or a comparable position with Defendant;

  B. compensation for back pay, front pay, lost retirement, lost wages, and other lost employee benefits;

  C. compensatory, statutory, and punitive damages in amounts to be determined at trial;

  D. attorneys' fees, costs, and interest; and

  E. such other relief as the Court deems appropriate.

## COUNT III
## DISCRIMINATION AND RETALIATION

  37. Mr. Dennis incorporates by reference herein paragraphs 1 through 36 above.

  38. Defendant and its supervisors racially and sexually harassed, discriminated, and retaliated against Mr. Dennis based on his race and sex within the meaning of Title VII and the PHRA.

  39. In contrast to its treatment of Mr. Dennis's comparators, Defendant failed to adequately investigate and address Mr. Dennis's complaints and grievances; laid him off and terminated him as a result of and/or in retaliation for his complaints and grievances; failed to rehire him; and otherwise violated various laws prohibiting racial harassment, discrimination, and retaliation including the Title VII and the PHRA.

  40. As a result of Defendant's unlawful conduct, Mr. Dennis has sustained lost wages, lost retirement, and other benefits, attorneys' fees and costs,

and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

41. Additionally, as a result of Defendant's intentional wrongdoing, which was committed in bad faith and in reckless disregard of Mr. Dennis's interests, he is entitled to punitive damages under federal law in excess of $75,000, plus interest and costs.

42. As a further result of Defendant's wrongful acts and omissions, Mr. Dennis has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related medical and mental health conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Gary Dennis, demands judgment in his favor and against Defendant, including the following relief:

A. reinstatement to his prior position or a comparable position with Defendant;

B. compensation for back pay, front pay, lost retirement, lost wages, and other lost employee benefits;

C. compensatory, statutory, and punitive damages in amounts to be determined at trial;

D. attorneys' fees, costs, and interest; and

E.	such other relief as the Court deems appropriate.

                              Respectfully submitted,

                              KEEFER WOOD ALLEN & RAHAL, LLP

Dated: 1/28/15                By:	<u>s/Bradford Dorrance</u>
                                      Bradford Dorrance
                                      PA I.D. #32147
                                      417 Walnut Street
                                      4th Floor Rear
                                      P. O. Box 11963
                                      Harrisburg, PA  17108-1963
                                      bdorrance@keeferwood.com
                                      (717) 255-8014 (phone)
                                      (717) 255-8042 (fax)

                                      (Attorneys for Plaintiff)